Taft, J.,
dissenting. Thé majority opinion suggests that, in order to be lawful, supplemental unemployment benefits, herein referred to as SUB, should be approved by some statutory or constitutional provision. However, that is not the question to be decided. The question to be decided is whether the General Assembly has expressed an intention that SUB payments must be deducted from amounts that would otherwise be payable to an unemployed worker under the Unemployment Compensation Act. See Moore v. Board of Review, Bureau of Unemployment Compensation, 165 Ohio St., 526, 530, 138 N. E. (2d), 245. The decisions, rendered in the instant cases appear to me to have resulted from the inclination of the majority of the court to find an intention which has not been expressed by the General Assembly and which cannot reasonably be implied from the words used by the General Assembly but which the majority believes the General Assembly should have expressed.
*331 SUB plans have been provided for by agreements between certain employers with labor organizations representing their workers. Under the Unemployment Compensation Act, the weekly benefits payable to an unemployed worker are largely dependent upon wages paid him in the highest earning quarter of a base period. Section 4141.30, Revised Code. Under the usual SUB plan, supplemental payments are made from a trust fund to a worker in an amount sufficient to bring the total received by him during a week of unemployment to a certain percentage of the average weekly wage that he had earned when working.[1]
These supplemental benefits are payable only out of a fund, held by a trustee and established by contributions from the employer of a certain number of cents for each hour worked by each of his employees.[2] The employee has a right to payments from the fund on the happening of contingencies such as those which make him eligible for payments under the Unemployment Compensation Act but such employee has no right against his employer for any part of such payments.
Although' as pointed out in the majority opinion the employer in the first instance considers and advises the trustee of the fund whether a claim for SUB payments should be allowed or disallowed, the SUB plan provides that “if any difference shall arise between the company and any employee as to * * * benefits payable * * # under the plan # * *, then the question shall be referred to an impartial umpire” for decision in accordance with the provisions of the plan. The only other responsibility or obligation of the em *332 ployer with regard to this SUB plan is to make the contributions for hours worked by employees at the time those hours are worked. The employer has no obligation under the plan to make payments to employees on account of their unemployment or to supplement the fund if it becomes insufficient to make such payments.
If we assume that the majority opinion is correct in considering plaintiff Posey as not being “totally unemployed” because he did not lose his status as an available employee, because he retained his seniority, pension rights and rights to severance pay, because he reported to his employer and because he registered and reported for state compensation, plaintiff would then at least come within the definition in Section 4141.01 .(N), Revised Code, of an individual who is “partially unemployed.”
Section 4141.01 (N), Revised Code, provides:
“An individual is ‘partially unemployed’ in any week if, due to involuntary loss of work, the total remuneration payable to him for such week is less than his weekly benefit amount. ’ ’
So far as pertinent, Section 4141.30, Revised Code, provides :
“Benefits are payable to each partially unemployed individual # * * on account of each week of * * * partial unemployment * * * in an amount equal to his weekly benefit amount less # # * the remuneration payable to him with respect to such week
Admittedly, plaintiff’s “weekly benefit amount” for the week ending September 7, 1957, was the $39 paid to him under the Unemployment Compensation Act. Appellants claim that $29 of the $31 of SUB payments paid plaintiff during that week should have been deducted from that $39. In order to prevail, appellants must contend that the $31 SUB payment was, within the meaning of Section 4141.30, Revised Code, “remuneration payable to” plaintiff “with respect to” or “for the week” ending September 7.[3]
*333 In Section 4141.01 (H), Revised Code, “remuneration” is defined as meaning “all compensation for personal services.”
In my opinion, the SUB payments to plaintiff did not represent compensation for personal services. Certainly they did not represent payment for anything he did in the week, ending September 7,1957. They were paid from a fund created by payments of a certain amount for each hour worked by plaintiff and his fellow employees. None of plaintiff’s work for which payments were made to that fund was work done in the week ending September 7. In order to be deductible under Section 4141.30, Revised Code, from “benefits * # * on account of” a “week of # * * partial unemployment,” “remuneration” must be for work done in that week. Any other conclusion would lead to absurd results. For example, if plaintiff worked for 40 hours at the rate of $3 per hour during the week ending August 24 and was not paid for that week’s work until two weeks later on September 6, it would be absurd to say that, within the meaning of Section 4141.30, Revised Code, such payment represented “remuneration payable to him with respect to” the week ending September 7.
To argue that the SUB payments to plaintiff represented “remuneration” is hardly more reasonable than to make the absurd argument that the unemployment compensation benefits paid to plaintiff under the Unemployment Compensation Act represented “remuneration.” SUB payments are much more accurately described by those words of Section 4141.01 (C), Revised Code, defining “benefits” as “money payments * * * for loss of remuneration due to * * * unemployment.”
The construction contended for by appellants would appear to be the extreme opposite of the liberal construction of the Unemployment Compensation Act which the General Assembly directed in Section 4141.46, Revised Code,'unless we conclude that the General Assembly did not intend such liberality to be to the potential beneficiaries under the act. But see Moore v. Board of Review, supra, and Acierno v. General Fireproofing Co., 166 Ohio St., 538, 544, 144 N. E. (2d), 201.
Actually, in enacting the Unemployment Compensation Act, the General Assembly expressly approved SUB. Thus, in Section 4141.36, Revised Code, it stated that the provisions of the *334 Unemployment Compensation Act “do not affect the validity of voluntary arrangements by which employees * * * collectively agree to make contributions for the purpose of securing benefits in addition to those provided by” the Unemployment Compensation Act. Essentially, the only difference between the “arrangements” so expressly approved and SUB is that, instead of “collectively” agreeing “to make contributions” directly themselves “for the purpose of securing benefits in addition to those provided by” the Unemployment Compensation Act (i. e., supplemental benefits),'the employees have collectively made an agreement with their employer under which the employer is to make such contributions for their work. It may reasonably be concluded that, in effect, the employees are making those contributions. Their amount is determined by the hours of and payment is made at the time of and is part of the compensation for their work. Instead of making an additional payment to each employee for each hour worked, the employer, pursuant to the collective agreement of his employees, makes that payment to a fund established “for the purpose of [their] securing benefits in addition to those provided for by” the Unemployment Compensation Act.
It is argued that the supplemental benefits contemplated by the foregoing provisions of Section 4141.36, Revised Code, must be benefits payable under the act and cannot be merely benefits payable under some private plan or from some nonpublic fund. However, the unsoundness of any such argument is demonstrated by the statutory words describing those benefits as “benefits in addition to those provided by” the Unemployment Compensation Act. What else could these supplemental unemployment benefits be other than “benefits in addition to those provided by” the Unemployment Compensation Act?
It may be suggested that approval of such supplemental benefits is limited to those resulting from contributions by employees. The reason why the G-eneral Assembly spoke in Section 4141.36, Revised Code, only of supplemental benefits so resulting is apparent from a reading of the other two sentences of that same statutory section. Those sentences make invalid any ‘ ‘ agreement by an employee to pay any portion of the contribution * * * required to be made by his employer under” the *335 Unemployment Compensation Act, and also prohibit “& deduction for such purposes from the remuneration or salary of” any employee. In view of those parts of the statute,- there might have been doubt whether employees could lawfully contribute to any plan for supplemental unemployment benefits. There are no provisions in the act which could .reasonably suggest any doubt as to the lawfulness of employer contributions to such a plan and hence there was no reason for mentioning an SUB plan except where it involved employee contributions. Certainly, there is no apparent reason why supplemental unemployment benefits should be unlawful if paid from a fund created by employer contributions if they are not unlawful when paid from a fund created by employee contributions.
Zimmerman, J., concurs in the foregoing dissenting opinion.

 For example, take an SUB plan providing for supplementation to 55 per cent of such wage and an unemployed worker whose average wage had been $120 per week. Such workér might get only $33 under the Unemployment Compensation Act. To bring him up to 55 per cent would require an additional payment of $33. Under such an SUB plan, he would be entitled to that payment on meeting requirements of the plan for qualification therefor.

 For example, under a particular SUB plan such contributions may amount to three cents an hour. Sometimes provisions are made for higher contributions for each hour worked until the fund has reached a certain level. Also provisions may be made for reducing the percentage level to which compensation is to be supplemented by the plan in the event that the fund falls below a certain amount.

 The General Assembly apparently used the words “with respect to such week” interchangeably with the words “for such week” and thereby indicated an intention that they should be given the same meaning. Compare Sections 4141.01 (M) and (N), and 4141.30, Revised Code.